## HOMER E. SARGENT *vs.* CHARLES F. KINDRED.

Opinion filed March 18th, 1895.

### Removal of Causes—When Right Waived.

Where a request was filed under the provisions of the enabling act, under which North Dakota became a state, for the transfer of a case pending when the statehood was acquired from the state to the Federal Court, and which case was so transferable under the provisions of the act, provided the request was made at the proper time, but when the record of the state court showed that, on two different occasions after statehood, the party filing the request had submitted matters for the decision of the state court, and such matters had been decided by the state court prior to the time of filing such request, and when the state court denied such request, *held*, that filing the request did not, under the circumstances, oust the state court of jurisdiction, or deprive it of the power to proceed to hearing and judgment in the case.

Per CORLISS and BARTHOLOMEW, J's.

### Mistake—When it Will Avail to Vacate Judgment.

To warrant a court in setting aside a judgment under the provisions of § 4939, Comp. Laws, on the ground of mistake, such mistake must consist in something having been done in the case, either by the court or the party, that was not intended to be done.

Per BARTHOLOMEW, J.

### Moving Papers Must Cover Terms of Statute.

Upon an application to the court to set aside a judgment for any of the causes specified in said section, the record upon which the application is heard must present facts which bring the case within the terms of the statute, or the application must be denied.

Per BARTHOLOMEW, J.

### Affidavit of Merits on Motion to Vacate Default.

On motion by defendant to be relieved from a judgment entered against him because of his default, he must present an affidavit of merits as well as a verified answer, or his motion must be denied.

Per CORLISS, J.

Appeal from District Court, Cass County; *McConnell*, J.

Action by Homer E. Sargent against Charles F. Kindred. From orders setting aside a judgment for plaintiff, and refusing, in a supplemental proceeding, to vacate said order, plaintiff appeals.

Reversed.

*Ball & Watson*, for appellant.

The defendant did not apply for relief from the judgment entered against him, within a year after he had knowledge of the judgment. Section 4939, Comp. Laws. Service of notice of judgment upon the attorney who had appeared in the cause was sufficient. *Merriam* v. *Gordon*, 22 N. W. Rep. 563; *Bell* v. *Lumber Co.*, 32 N. W. Rep. 561. And is notice to the party. *Schobacher* v. *Ins. Co.*, 17 N. W. Rep. 969; *Robbins* v. *Kuntz*, 44 Wis. 558; *Knox* v. *Clifford*, 41 Wis. 458; § 5336, Comp. Laws; *Yorke* v. *Yorke*, 3 N. D. 343; *Flanders* v. *Sherman*, 18 Wis. 575, 592.

Under the Wisconsin statute identical with our own, it is held that the court cannot grant relief from a default after a year from the time when defendant had notice, although he applied for relief within the year. *McKnight* v. *Livingston*, 1 N. W. Rep. 14; *Knox* v. *Clifford*, 41 Wis. 458; *Whitney* v. *Karner*, 44 Wis. 563; *Flanders* v. *Sherman*, 18 Wis. 593. Defendant is barred from relief by his own laches. *Cutler* v. *Button*, 53 N. W. Rep. 563; *Altman* v. *Gabriel*, 9 N. W. Rep. 633; *Groh* v. *Bassett*, 7 Minn. 259; *Gerish* v. *Johnson*, 5 Minn. 12; *Robbins* v. *Kuntz*, 44 Wis. 558; *McMurran* v. *Meek*, 49 N. W. Rep. 983. And laches will defeat the vacation of judgment, even within the time provided by statute. *Jonet* v. *Mortimer*, 29 La. Ann. 206; *Birch* v. *Frantz*, 77 Ind. 199; *Williams* v. *Williams*, 70 N. C. 665; *Bradford* v. *Coit*, 77 N. C. 72; *Calhoun* v. *Millard*, 121 N. Y. 69. And especially where the adversary has been prejudiced by the delay. *Wheeler* v. *Monahan*, 23 N. W. Rep. 109. The defendant submitted himself to the jurisdiction of the state court, and the petition for removal to the Federal Court did not destroy jurisdiction of the state court. *Wing* v. *C. & N. W. Ry. Co.*, 1 S. D. 455.

*Davis, Kellogg & Severance*, for respondent.

The statute authorizing the relief from a judgment entered through mistake or inadvertance within one year after notice thereof, is equivalent to providing that this relief may be granted within one year after actual knowledge of the judgment. *Pier* v. *Millard*, 63 Wis. 33; *Bever* v. *Beardmore*, 40 Ohio St. 70; *Wielan*

v. *Shilloch*, 23 Minn. 227; *Washburn* v. *Sharpe*, 16 Minn. 53; 1 Black on Judgments, 387; Freeman on Judgments, § 105. There are many purposes for which the implied authority of the attorney for a prevailing party is held to continue beyond the entry of the judgment. Not so, however, as to the attorney for the defeated party. Service of papers on the former attorney of the defeated party after judgment, is entirely ineffectual to bind the defendant. *Berthold* v. *Fox*, 21 Minn. 51; *Kronsnable* v. *Knoblauch*, 21 Minn. 57; *Sheldon* v. *Risedorph*, 23 Minn. 518; *Clark* v. *McGregor*, 21 N. W. Rep. 866; *Hooker* v. *Village*, 43 N. W. Rep. 741; *Hillegrass* v. *Bender*, 78 Ind. 228; *Cruikshank* v. *Goodwin*, 66 Hun. 626, 20 N. Y. Supp. 577; *Person* v. *Leather*, 7 So. Rep. 391; *Grames* v. *Hawley*, 50 Fed. Rep. 319; *Kamm* v. *Stack*, 1 Saw. 547; *Jackson* v. *Bartlett*, 8 Johns. 367; *McLaren* v. *Charrier*, 5 Paige Ch. 534; Weeks on Attorneys, 238, 239, 248. Where a petition for removal in proper form is made by the filing of a petition, the state court loses jurisdiction and cannot proceed further in the case until the Federal Court shall have held the removal improper. *Miller* v. *Sunde*, 1 N. D. 1, (44 N. W. Rep. 301.) The judgment having been entered without jurisdiction, the statutory limitation does not apply to a motion for its vacation. *In re Tilden*, 98 N. Y. 444; *Hurlburt* v. *Coman*, 43 Hun. 586; *Wharton* v. *Harlan* 66 Cal. 422; *Cowles* v. *Hayes*, 69 N. C. 410; *In re Underhills' Estate*, 9 N. Y. Supp. 457; *Hansen* v. *Hansen*, 12 Pac. Rep. 736; *Feikert* v. *Wilson*, 37 N. W. Rep. 585.

BARTHOLOMEW, J. There are two appeals submitted in this case. The first is from an order setting aside a judgment in plaintiff's favor, and the second is from an order refusing, upon a supplemental showing, to vacate the first order. These orders in turn involve two cases between the same parties which were in the same condition, and by stipulation the appeals in one case shall be held to cover both. We shall speak of but one case in this opinion.

In the order setting aside the judgment it is recited, *inter alia*,

that "at the time of the trial of said action the same had been removed to the Circuit Court of the United States, and this court had no jurisdiction to try and determine the same." This point is urged in this court. The above recital seems to contradict the record. The record shows that a request was filed by the defendant, under the provisions of the enabling act, under which this state was admitted into the Union, for such a transfer of the case, and that the request was denied. Furthermore, no such claim is made in the application to set aside the judgment, and it is not clear that point is in the case. But in no event is it well taken. The action was commenced in 1887, in the District Court of Cass County, in the late Territory of Dakota. There was diverse citizenship, the defendant not being a resident of such territory, and had North Dakota been a state at that time the action could have properly been transferred to the United States Circuit Court. Under the terms of the enabling act, after North Dakota became a state, cases in that condition might, upon request filed, be transferred to the proper Federal Circuit Court. But it has frequently been held, under such circumstances, that any action in the case after statehood by which a party submits himself to the jurisdiction of the state court, and the state court acts thereon, precludes such party from subsequently removing the case to the Federal Court. *Gull River Lumber Co.* v. *School District No. 39*, 1 N. D. 408, 48 N. W. 340; *Wing* v. *Railroad Co.*, (S. D.) 47 N. W. 530; *Ames* v. *Railroad Co.*, 4 Dill. 257, Fed. Cas. No. 324; *Gaffney* v. *Gillette*, 4 Dill. 264, Fed. Cas. No. 5,168; *Carr* v. *Fife*, 44 Fed. 713; *Murray* v. *Mining Co.*, 45 Fed. 387. The state court, as the successor of the territorial court, acquired jurisdiction of this case in November 1889, subject to be divested as in the enabling act specified. In June, 1890, the defendant moved upon affidavits for a continuance of the case, and such motion was granted. At the December term, 1890, this was repeated, and the motion denied. Thereupon the request to transfer to the Federal Circuit Court was filed and denied. If the right to the transfer depended upon the decision of any question of fact, such

as the question of diverse citizenship or the like, the filing of the application at once divested the state court of all jurisdiction to determine that question, and consequently of all jurisdiction of the case. *Miller* v. *Sunde*, 1 N. D. 1, 44 N. W. 301, and case there cited. But the court was bound to take notice of its own records, and those records showed conclusively that the defendant had waived his right to have the case transferred. It was as if a party should file a petition for removal on the ground of diverse citizenship and at the same time admit upon the record that no diverse citizenship existed. With the admission of the nonexistence of the only fact that could give the Federal Court jurisdiction standing upon the record, the state court could not be ousted of jurisdiction, as jurisdiction must rest somewhere. The order setting aside the judgment cannot be sustained upon the ground that the case had been transferred to the Federal Court.

The application to set aside the judgment was brought under § 4939, Comp. Laws, in which it is provided that the court "may also in its discretion and upon such terms as may be just at any time within one year after notice thereof, relieve a party from a judgment, order or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect," etc. As has been stated, the action was commenced in 1887, in the District Court for Cass County, in which two regular terms of court were held each year. The case was continued from term to term, always, as the record shows, at the request of the defendant, except in one instance. Plaintiff claimed in his complaint about $11,000, and defendant set up a counterclaim amounting to about $30,000. The amounts involved were such that the case was not likely to be forgotten or neglected. The interests of the defendant were in the hands of one of the most experienced and careful attorneys at this bar. At the June, 1890, term of the court, the case was continued, on defendant's motion, based upon affidavits showing the absence of a material witness, the court then stating that the case should stand for trial at the December term, and no further continuance would be granted, except for extraordinary

cause. When the case was reached for trial on December 6, 1890, the attorney for the defendant moved for a further continuance, and, we gather from the record, based his motion upon an affidavit of the defendant. The nature of that affidavit is not disclosed, but no claim whatever is made that it was based upon the sickness of defendant's son hereinafter mentioned. The application was denied. Immediately following this the request for the transfer was made and denied, thereupon the attorney for the defendant announced that he was under instructions from his client to first apply for another continuance, and, failing in that, to apply for the removal of the case, and pay no further attention to the case in that court, and then left the court room. The case having been called for trial, the attorney for the plaintiff then waived a jury, and introduced his proofs to the court, and the court at once entered an order for judgment, and the record recites that there was no appearance for defendant.

No further action seems to have been taken in the case until about November 1, 1891, when plaintiff caused a transcript of the case to be filed in the proper Federal Court, and at once moved to remand.. The same attorney who had represented the defendant in the state court appeared for him in the Federal Court, and opposed the motion to remand. The motion was not finally decided until March 2, 1892, (49 Fed. 485,) when the case was remanded. About that time counsel for plaintiff for the first time discovered that no formal judgment had ever been entered on the order for judgment made December 6, 1890. Thereupon he procured an order for the entry of judgment *nunc pro tunc* as of December, 6, 1890, and such judgment was entered March 15, 1892, and on the following day notice thereof, and of the taxation of costs, was served upon the defendant's attorney. On October 16, 1893, the defendant applied to the court to have such judgment set aside and vacated. The application was by sworn petition, wherein defendant declares he has a good defense as shown by his answer, that he is a resident of the State of Pennsylvania, and then proceeds: "That on or about the 6th day of

November, 1890, Charles G. Kindred the son of your petitioner, was taken suddenly and seriously ill with typhoid fever, and was confined to his bed by said illness until said illness was terminated by his death, which event took place on December 8, 1890, two days subsequent to the day fixed for the trial of the above cause. That during the illness of his son your petitioner was unable to leave his bedside for any length of time, and was unable and totally unfit, mentally and physically, to attend to any business whatsoever. That your petitioner, believing his son would not be well enough to permit him to be present on the day fixed for the hearing of said cause, and that he would not be able to subpœna his witnesses and prepare himself in time for the trial of said cause, mailed a letter to his counsel at Fargo, stating his inability to be present, and the reasons therefor, and, not hearing from them, presumed the hearing thereof had been postponed. That your petitioner was not aware of the fact that said hearing had taken place during his enforced absence, or that judgment had been entered against him, until about December 1, 1892, when he immediately sent his attorney from Philadelphia to ascertain the reason why judgment had been entered against him during his unavoidable and excusable absence, to effect an amicable adjustment of the matter, and have said judgment removed. That negotiations looking to an amicable settlement were entered into between the plaintiff and your petitioner, through their respective counsel, and remained pending for a long time, but finally terminated without any satisfactory arrangement for settlement being made between them. That since said negotiations were discontinued the plaintiff has obtained a certified copy of the record of said judgment, and has brought suit thereon in the Circuit Court of the United States for the eastern district of Pennsylvania, for the purpose of enforcing the payment of said judgment in the City and County of Philadelphia, the present residence of your petitioner, which suit is now pending and undetermined. That although the hearing in this cause was fixed for December 6, 1890, your petitioner had a right to, and did,

presume that no judgment would be entered without notice, and without giving him an opportunity to present his defense; and the entering of said judgment *nunc pro tunc* on March 15, 1892, after a lapse of very nearly a year and a half from the time of hearing, without notice of any kind or character being given to him, either that said judgment would be or had been entered against him, tended to mislead and deceive him, and did mislead and deceive him, and deprived him of the opportunity of opposing the entering of said judgment, or, when entered, of appealing to the discretion of your honorable court, under the circumstances of the case, to open said judgment and permit him to present his defense. Your petitioner avers that he will be able, if granted the opportunity by your honorable court, to fully establish by competent testimony the facts set forth in his answer; and he further avers that except for the long and fatal illness of his son he would have presented himself with his witnesses before your honorable court on December 6, 1890, the last date fixed for the hearing of said cause, fully prepared to sustain all the allegations contained in his answer in the said cause; and he respectfully submits that said answer sets up a full, complete, and conclusive defense to the whole of the plaintiff's claim." We have set out in full all material averments in said application. It was supported and opposed by affidavits. The order of the court setting aside the judgment, after reciting the record upon which the application was heard, and that the court was without jurisdiction at the time the order for judgment was entered, as hereinbefore noticed, proceeds: "And it further appearing that the said defendant had no notice or knowledge of said judgment herein entered until on or about the 1st day of December, 1892, and that the answer of said defendant states a good defense upon the merits of said action, and that the defendant was surprised and misled by the entry of said judgmemt on the 15th day of March, 1892, said cause having been tried in the December, 1890, term of said court, and the court having heard the arguments of counsel herein," etc. We quote this to show the precise ground

upon which the court based the relief that it gave, and that such court did not find as a matter of fact that defendant's failure to appear and contest the case in December, 1890, was due to the sickness of his son, or that there was any mistake, inadvertence, surprise, or excusable neglect upon the part of the defendant in the conduct of said cause at, or prior to, the time of the entry of the order for judgment. But the fact that the trial court may have based the relief granted upon improper grounds would not warrant a reversal, provided, upon the whole record, the defendant was entitled to the relief which he received; and we shall therefore review the application briefly.

We first notice the allegations pertaining to the sickness of defendant's son. The facts as stated are no doubt true, and had these facts been brought to the attention of the court in any proper manner on December 6, 1890, the cause would certainly have been continued. But did the sickness of the defendant's son in any manner influence him in his conduct of the case? It is true that the petition states that but for such sickness defendant would have been present with his witnesses on December 6, 1890. But this petition was verified three years later. In the *interim* many facts would escape the memory. The recollection of the melancholy facts of the sickness and death of a son would remain vivid with the defendant while contemporaneous facts would be forgotten. There are certain undisputed facts in this case, of a character so easily disputed, if not true, that, in the absence of all contradictions, we must regard them as true, which make it certain that the conduct of the case was not influenced by the sickness of defendant's son. When the case was reached for trial, the attorney for defendant moved on affidavit of defendant and upon undisclosed grounds for further continuance, which being denied, he filed a request for a transfer to the Federal Court, and when that was denied he stated in open court that he was instructed by his client to take the course he had taken and then give the case no further attention in that court. This shows conclusively that defendant had determined, for reasons irrespec-

tive of the sickness of his son, not to be present at the December, 1890, term when said case was set for trial; and, as we have stated, these facts are not questioned by affidavit, nor was any attempt made to avoid their force in argument. We cannot, therefore, nor could the trial court, properly consider the fact of the sickness of defendant's son, as that fact had no bearing upon the conduct of the case. We are left with this state of facts: The case is standing on call for trial. The attorney for the defendant leaves the court room, with the statement that he is instructed to pay no further attention to the case in that court. Thereupon plaintiff proceeds with his proofs and obtains an order for judgment. Fifteen months thereafter he has judgment entered *nunc pro tunc*, and at once serves notice of the entry of judgment and of the retaxation of costs upon defendant's attorney. More than a year and a half thereafter, an application is made to set the judgment aside on the ground of mistake, inadvertence, surprise, or excusable neglect, with an allegation that no actual notice of the judgment was had until about ten months before the making the application. It is urged upon us that the application was not within the statutory limitation; that notice of the entry of judgment to the attorney was notice to the defendant, and more than a year had expired after notice before application for relief was made; and that in any event, the lapse of ten months after notice was brought to defendant personally, and before application, was, under the circumstances of this case, such laches on the part of defendant that he ought not to be relieved. I find it unnecessary to discuss these interesting questions, as I do not think the facts entitle defendant to any relief. There was no claim of any mistake of fact, or that anything was done, either by the defendant or the court, that was not intended to be done; and it is only in such cases that relief can be granted on the ground of mistake. 1 Black, Judgm. § 335, and cases cited. There was no inadvertance. The course the defendant pursued he pursued advisedly. There was no neglect. Defendant did all that he

intended to do. Where a case is on call for trial and the defendant voluntarily withdraws, he cannot afterwards be heard to say that the judgment was a surprise to him. True, he says that, because judgment was not entered at the time fixed for hearing, therefore he had a right to presume, and did presume, that no judgment would be entered against him without notice, and that the entry of the judgment *nunc pro tunc* without notice misled and deceived him, and deprived him of the right to oppose the entry of judgment. But the entry of judgment after the order of December 6, 1890,—and the lower court seems to have found such to be the fact,—was a duty that devolved upon the clerk. *Gould* v. *Elevator Co.*, 3 N. D. 102, 54 N. W. 316. No further action of the court would have been required but for the failure of the clerk to perform that duty. It was too late to urge anything against the entry of judgment. The order for that had already been made. The only matter that subsequently came before the court was the propriety of directing that judgment to be entered *nunc pro tunc*, and the order in that respect is not assailed. There is nothing in that connection entitling defendant to any relief. To us it seems too clear for argument that defendant voluntarily abandoned his case in the state court because he believed that jurisdiction had been transferred to the Federal Court. Then, instead of taking the proper steps to give himself a standing in that court, he waited until the other party, in order to clear the record of all doubt, and nearly a year thereafter, took a transcript into the Federal Court, and moved to remand the case. That motion the defendant vigorously opposed, but it was ruled against him. He now seeks by this application to be relieved from the consequences of his own deliberate and voluntary acts. We know of no statute or legal principle that entitles him to relief, and his application should have been denied; and, since the order vacating the judgment was wrong, it necessarily follows that the order refusing to set aside such improper order was also wrong.

On each appeal the order appealed from is reversed.

WALLIN, C. J., having been of counsel, did not sit at the hearing of this case, or take any part in the decision.

CORLISS, J. I am unable to concur in the views of my associate, but I reach the same conclusion on a different line of argument. The defendant was, on the motion, asking a favor of the trial court; but he failed to present any affidavit of merits on the motion. This would clearly be fatal to his claim for relief, had there been no verified answer in the case (*Gauthier* v. *Rusicka*, 3 N. D. 1, 53 N. W. 80,) and I do not think that the fact that he had already served a verified answer excused him from making such an affidavit. To require it imposes no great burden on a man who honestly believes that on the whole case he has a meritorious defense. Such affidavit is short and easily drawn, and its averments cannot for the purposes of the motion be denied. They must be taken to be true. Freem. Judgm. § 109; *Worth* v. *Wetmore*, (Iowa,) 54 N. W. 56. If a judgment is not unjust, a court will never relieve a party from it if the court rendering it had jurisdiction. When the suitor is forced to ask a favor of the court, he must make out a strong case of injustice. It is not sufficient to show that his default was taken. It is not even enough for him to be able to swear to an answer setting forth a defense. The averments of the answer may all be true, and yet there may exist facts, to the knowledge of the defendant, which entirely destroy the force of the defense. He may know of matters in avoidance of such defense. In such a case he should not be relieved from the judgment, for the judgment is just. When he prays for such relief he should satisfy the court by his oath that such condition does not exist,—that he not only has a defense, but that he knows of no matter which will render that defense nugatory. It is for this reason that courts hold that an affidavit of merits is insufficient which sets forth that the party has stated "his defense" to his attorney, or "the facts of his defense," or "his case." He must swear that he has stated the whole case, or "the case," to his attorney, and that on such disclosure of everything that he knows about the case his attorney

advised him that he has a good and substantial defense on the merits. *Morgan* v. *McDonald*, 70 Cal. 32, 11 Pac. 350; *Burnham* v. *Smith*, 11 Wis. 258; Freem. Judgm. § 108. Had there been no verified answer, an affidavit setting forth that the defendant had stated his defense to his attorney, and had been advised by him that it was meritorious, would have been insufficient. And yet that is the full scope of the verified answer. It does not purport to negative the knowledge of the defendant of the existence of facts in avoidance of the defense. Is there any reason why a party who is asking for indulgence after an answer is served should be allowed to obtain relief on terms less strict than one who is asking for such relief before an answer has been served? What the court should require in all such cases is the oath of the party that he has been advised by his counsel that he has a good and substantial defense on the merits, after full disclosure to such counsel of all facts relating to the case of which the client has knowledge. It may often be true that a client can truthfully swear to facts which on their face constitute a defense, knowing all the time that his counsel has advised him that certain other facts which he has disclosed to his attorney utterly destroy the defense; or the client may not reveal such facts to his counsel, and yet he could verify the answer. In *Gauthier* v. *Rusicka*, 3 N. D. 1, 53 N. W. 80, we intimated that there was much force in the position that an affidavit of merits should be required in addition to the verified answer. There is express authority to support it. *Mowry* v. *Hill*, 11 Wis. 146; *Jones* v. *Russel*, 3 How. Prac. 324; Freem. Judgm. § 108; *Burnham* v. *Smith*, 11 Wis. 269; 1 Black, Judgm. § 347. Says Mr. Black: "But in all cases where the application is not based upon want of jurisdiction or irregularity, but upon something presented as an excuse by the defendant, he must make an affidavit of merits, and nothing else can take its place or serve its purpose. An answer to the complaint already on file, or which the defendant proposes to file, is not equivalent to an affidavit of merits, although it discloses a defense apparently complete and meritorious, and although it is

verified." In *Burnham* v. *Smith* the court, speaking of its decision in *Mowry* v. *Hill*, says: "We held in *Mowry* v. *Hill*, (decided at this term) 11 Wis. 152, that an affidavit of merits should be filed on such application. The practice is salutary, and tends to prevent litigation for delay merely. We held also that a sworn answer was not sufficient, because a party may be able to swear to an answer which alone would show a defense and yet know that on the trial its effect might be entirely avoided by other facts. It is upon this reason that the authorities deny that it is sufficient in an affidavit of merits to state that the party has stated 'his defense' to counsel. If he had stated the whole facts of the case within his knowledge, then advice might have been entirely different." I have been unable to find a single decision holding that an affidavit of merits is not, in a case like this, indispensable, in addition to a verified answer. For the reasons that I have stated, I am in favor of a reversal of the orders appealed from.

(63 N. W. Rep. 151.)